1   Robert C. Moest, Of Counsel (S.B.N. 62166)
2   **THE BROWN LAW FIRM, P.C.**
    2530 Wilshire Boulevard, Second Floor
3   Santa Monica, CA 90403
    Telephone:   (310) 915-6628
4   Facsimile:   (310) 915-9897
5   Email: RMoest@aol.com

6   *Counsel for Plaintiffs*

7   [Additional Counsel Listed on Signature Page]

8

9                  **UNITED STATES DISTRICT COURT**

10                 **CENTRAL DISTRICT OF CALIFORNIA**

11                      **WESTERN DIVISION**

12

13   IN RE FARADAY FUTURE            Lead Case No. 2:22-cv-01570-CAS-(JCx)
     INTELLIGENT ELECTRIC INC.       Consolidated with
14   DERIVATIVE LITIGATION           Case No. 2:22-cv-01852-CAS-(JCx)
15

16
     This Document Relates to:       Hon. Christina A. Snyder
17           ALL ACTIONS
18                                   **MEMORANDUM OF LAW IN SUPPORT**
                                     **OF PLAINTIFFS' UNOPPOSED**
19                                   **MOTION FOR ATTORNEYS' FEES,**
                                     **REIMBURSEMENT OF EXPENSES,**
20                                   **AND SERVICE AWARDS**
21
22                                   Date:  November 4, 2024
                                     Time: 10:00 a.m.
23                                   Place: Courtroom 8D
24

25

26

27

28

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................2

III.  THE NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND
     REASONABLE..........................................................................................3

   A.  The Agreed-To Fee and Expense Amount Merits Substantial
       Deference................................................................................................3

   B.  A Fee Award Is Warranted Under the Substantial Benefit Doctrine....6

   C.  Other Factors Confirm the Reasonableness of the Fee and Expense
       Amount ...................................................................................................7

       i.  The Fee and Expense Amount Is Reasonable Relative to the
           Value of the Settlement Benefits and Compared to Similar
           Settlements ...................................................................................8

       ii.  Plaintiffs' Counsel Provided High Caliber Representation ......10

       iii.  Plaintiffs' Counsel Bore Significant Contingency Risk ...........12

       iv.  Plaintiffs' Counsel Invested Significant Time and Expenses...13

       v.  Public Policy Supports the Agreed-To Fee and Expense
           Amount.......................................................................................16

IV.  THE PROPOSED SERVICE AWARDS ARE JUSTIFIED AND
     REASONABLE........................................................................................17

V.  CONCLUSION.........................................................................................18

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................... 15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................... 12

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
    2021 WL 911216 (S.D.N.Y. Mar. 7, 2021)........................................ 4

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949)................................................................... 16

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................... 3, 9, 13, 15

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016)...................................... 14

*Elias v. Ungar's Food Products, Inc.*,
    2013 WL 12426604 (D.N.J. Jan. 28, 2013)........................................ 5

*Farazmand v. Breitfeld, et al.*,
    Case No. 2023-1283-LWW (Del. Ch.) ............................................ 1

*Granada Invest., Inc. v. DWG Corp.*,
    962 F.2d (6th Cir. 1992) ............................................................ 11

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)................................................................... 3

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................ 14

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................ 14

*In re AOL Time Warner S'holder Derivative Litig.*,
    2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ..................................... 16

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

*In re Apple Computer, Inc. Derivative Litig.*,
   2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ...................................................... 4, 6

*In re Ashanti Goldfields*,
   2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ................................................. 10, 11

*In re Atmel Corp. Derivative Litig.*,
   2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ......................................................... 4

*In re Babcock & Wilcox Enters., Inc. S'holder Derivative Litig.*,
   Case No. 3:18-cv-00347-MOC-DCK, slip op. (W.D.N.C. Dec. 19, 2019) ......... 10

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 15

*In re Caremark Int'l*,
   698 A.2d 959 (Del. Ch. Sept. 25, 1996) ............................................................... 12

*In re Cell Therapeutics, Inc. Derivative Litig.*,
   Case No. 2:10-cv-00564-MJP, slip op. (W.D. Wash. May 31, 2013) ................... 9

*In re Cendant Corp. Derivative Action Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) ....................................................................... 17

*In re FAB Universal Corp. S'holder Derivative Litig.*,
   148 F. Supp. 3d 277 (S.D.N.Y. 2015) ...................................................... 12, 13, 17

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 11

*In re Inovio Pharms. Derivative Litig.*,
   Case No. 2:20-cv-01962-GJP, slip op. (E.D. Pa. Oct. 11, 2023) ........................ 10

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 15

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 17

*In re MRV Commc'ns, Inc. Derivative Litig.*,
   2013 WL 2897874 (C.D. Cal. June 6, 2013) .................................................... 7, 11

iii

*In Re Ntl, Inc. Sec. Litig.*,
  2007 WL 623808 (S.D.N.Y. Mar. 1, 2007)........................................................ 15

*In re Oracle Sec. Litig.*,
  852 F. Supp. 1437 (N.D. Cal. 1994) ................................................................. 7

*In re OSI Sys., Inc. Derivative Litig.*,
  2017 WL 5642304 (C.D. Cal. May 2, 2017)............................................. 6, 12, 17

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................ 12, 13

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009)........................................................ 7

*In re RH S'holder Derivative Litig.*,
  Case No. 4:18-cv-02452-YGR, slip op. (N.D. Cal. Dec. 18, 2020).................... 10

*In re RTI Surgical Derivative Litig.*,
  2022 U.S. Dist. LEXIS 96385 (N.D. Ill. Jan. 24, 2022)...................................... 9

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
  2008 WL 185809 (D.N.J. Jan. 14, 2008)............................................................ 8

*In re Schering-Plough/Merck Merger Litig.*,
  2010 WL 1257722 (D.N.J. Mar. 26, 2010) ..................................................... 4, 5

*In re Synchronoss Techs., Inc. S'holder Deriv. Demand Refused Litig.*,
  2021 U.S. Dist. LEXIS 238014 (D.N.J. Dec. 13, 2021) .................................... 10

*In re Synchrony Fin. Derivative Litig.*,
  Case No. 3:19-cv-00130-VAB, slip op. (D. Conn. Apr. 5, 2024)...................... 10

*In re Zuora, Inc. Derivative Litig.*,
  Case No. 3:19-cv-05701-SI, slip op. (N.D. Cal. Sept. 18, 2023) ......................... 9

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ....................................................................... 3

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991).......................................................................................... 16

iv

*Klein v. City of Laguna Beach*,
    810 F.3d 693 (9th Cir. 2016) ................................................................ 8

*Littlejohn v. Copland*,
    819 F. App'x 491 (9th Cir. 2020) ...................................................... 14

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D.N.Y. 2014) ...................................................... 17

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ....................................................... 8, 11

*McAlarnen v. Swift Transp. Co., Inc.*,
    2010 WL 365823 (E.D. Pa. Jan. 29, 2010) .......................................... 5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ......................................................................... 6, 7

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 4

*Roberti v. OSI Sys., Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ...................................... 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................. 17

*Sauby v. City of Fargo*,
    2009 WL 2168942 (D.N.D. July 16, 2009) ...................................... 17

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................ 4, 5

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978) .............................................................. 11

*Sugarland Indus. v. Thomas*,
    420 A.2d 142 (Del. 1980) ................................................................... 7

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966) ......................................................................... 16

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989).................................................................... 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................... 14

*Weber v. Government Employees Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ............................................... 5

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. June 22, 2015)..................... 14

*Young v. Ault*,
    2020 U.S. Dist. LEXIS 131898 (C.D. Cal. July 14, 2020) ........................... 12, 17

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 23.1(c)............................................................... 1

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

Pursuant to Fed. R. Civ. P. 23.1(c), the Stipulation and Agreement of Settlement dated July 19, 2024 (the "Stipulation" or "Stip."),[1] and the Preliminary Approval Order (ECF No. 105), Plaintiffs Ashkan Farazmand and Wangjun Zhou (the "California Plaintiffs") on behalf of Faraday Future Intelligent Electric Inc. ("Faraday" or the "Company") respectfully move this Court for an order: (i) approving the requested $775,000 agreed-upon Fee and Expense Amount to collectively compensate all Plaintiffs' Counsel in the Derivative Actions for the substantial benefits their efforts and services produced for the Company, inclusive of reimbursement for their case-related out-of-pocket expenses; and (ii) approving $2,000 service awards for each Plaintiff in recognition of their participation and efforts in prosecuting the Derivative Actions (to be paid exclusively from the Fee and Expense Amount). *See* Stip., §V, ¶4.

## I.    INTRODUCTION

After extensive arm's-length negotiations between well-informed and experienced counsel, the Parties reached an agreement to settle and compromise claims pending in five shareholder Derivative Actions, including the California Action (the "Settlement"). The Settlement was reached with the assistance of a highly qualified mediator following substantial investigation. As explained in greater detail in the California Plaintiffs' accompanying final approval brief, the Settlement addresses the core concerns raised in the Derivative Actions and is an outstanding resolution. Plaintiffs' Counsel's efforts prosecuting the Derivative Actions on Faraday's behalf and achieving the Settlement unquestionably confers "substantial benefits" upon the Company and its stockholders. See

---

[1]     Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation (ECF No. 100). The Stipulation fully and finally resolves this California Action and the following related stockholder derivative actions: (i) *Farazmand v. Breitfeld, et al.*, Case No. 2023-1283-LWW (Del. Ch.); (ii) *Moubarak v. Breitfeld, et al.*, Case No. 1:22-cv-00467-GBW (D. Del.); (iii) *Wang v. Breitfeld, et al.*, Case No. 1:22-cv-00525-GBW (D. Del.); and (iv) *Wallace v. Breitfeld, et al*., Case No. 2023-0639-LWW (Del. Ch.) (together, the "Derivative Actions").

Stip., § V, ¶ 2.2. Accordingly, and in consideration of the significant corporate governance reforms, which Faraday has agreed to implement and maintain (the "Reforms"), pursuant to the Settlement and as a direct result of Plaintiffs' and Plaintiffs' Counsel's efforts, Defendants' insurers agreed to pay to Plaintiffs' Counsel attorneys' fees and expenses in the amount of $775,000, subject to Court approval (the "Fee and Expense Amount"). Stip., § V, ¶ 4.1. Significantly, it was only after the Parties reached an agreement in principle on the material terms of the settlement, that the Parties separately negotiated this Fee and Expense Amount at arm's-length and with substantial assistance from the mediator, Robert A. Meyer of JAMS (the "Mediator"). Stip., §I, G. California Plaintiffs respectfully submit that the Fee and Expense Amount is fair and reasonable under all relevant factors and should be approved.

Plaintiffs also seek modest $2,000 Service Awards each (totaling $10,000 and to be paid from the Fee and Expense Amount) to compensate them for stepping forward and dedicating their time and attention to the successful resolution of this matter for the benefit of Faraday and its stockholders. These awards are likewise fair and reasonable under the circumstances and should be approved.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A detailed background of the facts and procedural histories of the Derivative Actions is set forth in the Declaration of Timothy Brown in Support of Plaintiffs' Unopposed Motions for Final Approval of Settlement and Attorneys' Fees, Reimbursement of Expenses, and Service Awards (the "Brown Decl."), filed herewith, as well as in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final

Approval of Settlement. For purposes of brevity, California Plaintiffs incorporate by reference those background sections herein.

## III.   THE NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE

### A.   The Agreed-To Fee and Expense Amount Merits Substantial Deference

The U.S. Supreme Court has endorsed the consensual resolution of attorneys' fees as the ideal towards which litigants should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Where there is no evidence of collusion, courts accord substantial deference to fee and expense amounts determined by the parties. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (affording "substantial weight to a negotiated fee amount"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("where . . . the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference").

The Parties mutually determined the Fee and Expense Amount. These negotiations occurred after agreeing in principle on the Settlement's material substantive terms, including the Reforms; were conducted at arm's length with the assistance of the experienced Mediator; and (subject to Court approval) will be paid "[i]n consideration of the substantial benefits conferred upon Faraday as a direct result of the Reforms and Plaintiffs' and Plaintiffs' Counsel's efforts in connection with the Derivative Actions." Stip., § I,G; § V, ¶4.1; Brown Decl., ¶ 51. The Settlement—including the Fee and Expense Amount—enjoys the full support of the Company and its Board as being "in the best interest of Faraday." Stip., § IV.[2] Both sides agree that $775,000 is a fair and reasonable sum.

---

[2]   *See also* Stip., § III (Defendants have "determined that it is in the best interest of Faraday for the Derivative Actions to be settled in the manner and upon the terms and conditions set forth in this stipulation").

3

Plainly, no collusion occurred here and negotiations on a reasonable fee only began after agreement on the Settlement's material substantive terms. *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014)("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness"). And a mediator's involvement in the settlement negotiations—like that occurred here—further "helps to ensure that the proceedings were free of collusion and undue pressure." *In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (internal citations and quotations omitted). *See also In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) (approving fee where the court was "mindful" that the request "was a negotiated amount with the assistance of a neutral third party" mediator).

As the Ninth Circuit has explained, "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). *See also In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement.")

Unlike fee awards in class actions or cases where there may be a contested fee application, this Court is not being called upon to fashion a fee award from scratch. Rather, the Court need only determine whether the amount of the Fee and Expense Amount—agreed upon by the sophisticated Parties represented by experienced counsel in arm's-length negotiations and conducted with the assistance of the reputable Mediator[3] after the

---

[3]     *See, e.g., City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2021 WL 911216, at *11 (S.D.N.Y. Mar. 7, 2021) (referring to Mr. Meyer as a "well-respected and experienced mediator").

Settlement's substantive terms were determined—falls within the range of reasonableness. *See* Stip., § I, G. Further, unlike in class actions, where the diverging interests of counsel and class members may warrant scrutiny when defendants agree not to oppose fee applications "up to" a certain amount, here the Parties reached agreement on the actual Fee and Expense Amount in negotiations where the real party in interest (Faraday) was represented by top-flight counsel with every incentive to negotiate the lowest fee. U.S. District Judge Lewis J. Liman's approval in *Allred v. Walker* of a settlement and agreed-to attorneys' fees and expenses award in a derivative action sheds light on why the Court's analysis of the proposed Fee and Expense Amount here should be limited. 2021 WL 5847405, at *5 (S.D.N.Y. Dec. 9, 2021). Judge Liman observed:

> The few courts that have considered the issue over the years have held that great, and potentially dispositive, weight should be given to a fee amount not to be paid from a common fund negotiated at arm's length between sophisticated counsel after the substantive terms of a settlement have been agreed. *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness." (citing cases)); *Elias v. Ungar's Food Products, Inc.*, 2013 WL 12426604, at *8 (D.N.J. Jan. 28, 2013) (approving "fee agreement [that] was reached only after the parties had agreed on the principle terms of the settlement"); *McAlarnen v. Swift Transp. Co., Inc.*, 2010 WL 365823, at *12 (E.D. Pa. Jan. 29, 2010) (holding that fact that "counsel [did not] engage in arm's-length negotiations over fees and costs to be paid by Defendant" until after substantive settlement terms had been agreed weighed in favor of approving fee petition); *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *8 (D.N.J. Mar. 26, 2010) (approving fee award that was "the product of mediation conducted before a disinterested and revered member of the legal community"); *Weber v. Government Employees Ins. Co.*, 262 F.R.D. 431, 451 (D.N.J. 2009) (approving award where "the parties' agreement with regard to attorney's fees was the product of arm's-length negotiations which did not commence until after the parties had reached agreement in principle of all the terms relating to relief for the Class" (internal quotation marks omitted)).

> There is force to the argument that the Court should defer to the agreement of the parties reached at arms-length regarding an appropriate fee where that fee

5

is not to be paid from a common fund and was agreed in the presence of a mediator and after the substantive terms of the settlement were reached. The fact that the fee is not to be paid from the common fund eliminates the concern, present in many securities class action settlements, that the fees to be awarded to counsel will deplete the funds available to pay injured class members who have released their claims. The fact that the fees are negotiated and agreed only after the substantive settlement terms have been agreed and that the agreement on the substantive settlement terms is not contingent on an agreement on fees addresses the further risk that counsel will trade away the interests of her client in exchange for the defendant to pay her attorneys' fees. The presence of a mediator for both the substantive settlement and the later negotiation of fees also goes far to eliminate the risk of collusion. At the same time, by respecting the arms-length agreement between the parties regarding fees, the Court allows each party to mitigate its own risk—the risk on the part of plaintiff that the Court will grant what plaintiff would consider an inordinately small award and the risk on the part of defendant that the Court will be extravagant in its fee award. Each side, with knowledge that if they do not reach agreement the Court will determine the fee award in light of the *Goldberger* factors, can assess the award that it believes to be reasonable. Assuming an arms-length negotiation between experienced counsel, the award should fall within the wide range of fees the Court would be permitted to award even without the agreement of the parties.

*Id.* at \*5-6. Thus, the Parties' conclusion that the agreed-upon Fee and Expense Award is fair and reasonable is entitled to "significant deference." *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5642304, at \*5 (C.D. Cal. May 2, 2017).

## B. A Fee Award Is Warranted Under the Substantial Benefit Doctrine

Under the "substantial benefit" doctrine, counsel who successfully prosecute a stockholder derivative action are entitled to attorneys' fees and expenses in reasonable proportion to the value of the substantial benefits achieved. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 394-96 (1970). It is well-settled that the "substantial benefits" obtained for the company need not be monetary. As explained in *Mills*, "a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Id.*, at 395. And "private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to

all stockholders[.]" *Id.* at 396; *see also In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("Following *Mills*, courts consistently have approved attorneys' fees and expenses in shareholder actions where plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief."); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445-50 (N.D. Cal. 1994) (changes in governance likely to produce economic benefits or cost avoidance are "fund creating actions" meriting fee and expense awards) (quoting *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989)). Here, Plaintiffs' Counsel's diligent work yielded substantial benefits of significant value that warrant attorneys' fees as set forth below and in more detail in California Plaintiffs' accompanying brief in support of final approval of the Settlement. Indeed, Faraday and its Board agree that the Reforms "confer substantial benefits on Faraday and Faraday's stockholders," and that Plaintiffs' litigation efforts "were the cause of the adoption, implementation, and maintenance of the Reforms." Stip., §V, ¶ 2.2.

## C.   Other Factors Confirm the Reasonableness of the Fee and Expense Amount

Applying the following relevant factors identified by courts in the Ninth Circuit and Delaware in derivative litigation further confirms the reasonableness of the agreed-upon Fee and Expense Amount: (i) the benefits achieved; (ii) the complexity of the litigation; (iii) litigation risk and the contingent nature of the fee arrangement; (iv) quality of work performed; (v) time and expenses incurred; and (vi) the standing and ability of the lawyers involved. *See, e.g.*, *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *6 (C.D. Cal. June 6, 2013); *see also Sugarland Indus. v. Thomas*, 420 A.2d 142, 149 (Del. 1980); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) ("The court has analyzed state and federal law governing derivative counsel fees and has found no substantial differences between Delaware and federal law.").

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

i.  <u>The Fee and Expense Amount Is Reasonable Relative to the Value of the Settlement Benefits and Compared to Similar Settlements</u>

Traditionally, a court's primary consideration in determining a reasonable fee award focuses on the benefits achieved through the litigation. *See Klein v. City of Laguna Beach*, 810 F.3d 693, 698-99 (9th Cir. 2016). The Reforms secured for Faraday confer substantial benefits with real value, which likely exceed the agreed-to Fee and Expense Amount by an order of magnitude. *See In re Schering-Plough Corp. S'holders Derivative Litig.*, 2008 WL 185809, at *5-6 (D.N.J. Jan. 14, 2008) (approving $9.5 million fee) ("The adoption of the corporate governance and compliance mechanisms required by the settlement can prevent breakdowns in oversight that would otherwise subject the company to risk of regulatory action, or uncover and remedy a problem at the early stages before it becomes the subject of a government investigation. Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions."); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor.").

Here, Plaintiffs' Counsel's efforts produced a strong settlement that provides for valuable and sweeping corporate governance reforms for Faraday. The bulk of the allegations in the Derivative Actions stem from Company's failures regarding risk management, compliance, and disclosure controls, and that these failures in turn led to the propagation of misleading public information regarding Faraday's operations and its legacy business. The Reforms directly address the above alleged deficiencies and other general weaknesses in Faraday's corporate governance, as more fully explained in California Plaintiffs' accompanying final approval brief, by: (i) establishing a management-level Disclosure Committee charged with reviewing Faraday's public statements; (ii) enhancing the Audit Committee's oversight responsibilities regarding risk

8

management; (iii) establishing a formal policy for well-defined duties for the Compliance Officer; (iv) requiring the appointment of a Lead Independent Director where the CEO and Board Chair are the same person; (v) requiring the Compensation Committee to annually review its guidelines and policies and consider management's compliance with policies which may be accounted for in setting incentive-based compensation; and (vi) enhancing the Company's whistleblower policy and providing for employee training. *See* Stip., Ex. A. Because the Reforms must be maintained for at least three years (Stip., § V, ¶ 2.1), there will be enough time for them to become embedded in Faraday's corporate culture and governance practices. *See Cohn*, 375 F. Supp. 2d at 850 (reforms that will be in place for at least three years "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

Additionally, the Fee and Expense Amount compares favorably to fees approved in derivative settlements with similar relief, confirming its reasonableness:

- *In re Zuora, Inc. Derivative Litig.*, Case No. 3:19-cv-05701-SI, slip op. (N.D. Cal. Sept. 18, 2023) (approving $2 million fee award for settlement amending disclosure committee charter to expand its responsibilities, creating chief compliance officer and chief technology officer positions, broadening audit committee obligations, and enhancing the company's whistleblower policy, among other reforms) (Brown Decl., Exs. 12 & 13).

- *In re RTI Surgical Derivative Litig.*, 2022 U.S. Dist. LEXIS 96385, at *3 (N.D. Ill. Jan. 24, 2022) (approving $1.5 million fee award for settlement establishing management-level disclosure committee, expanding audit committee responsibilities, requiring the appointment of a lead independent director where the CEO and board chair are the same person, and changes to the company's whistleblower policy, among other reforms) (Brown Decl., Ex. 14).

- *In re Cell Therapeutics, Inc. Derivative Litig.*, Case No. 2:10-cv-00564-MJP, slip op. (W.D. Wash. May 31, 2013) (approving $1.3 million fee award for settlement creating a charter for the disclosure committee and expanding its duties, broadening the duties of the chief compliance officer, creating a chief governance officer position, and enhancing the company's whistleblower policy, among other reforms) (Brown Decl., Exs. 15 & 16).

9

- *In re Inovio Pharms. Derivative Litig.*, Case No. 2:20-cv-01962-GJP, slip op. (E.D. Pa. Oct. 11, 2023) (approving $1.175 million fee award for settlement creating a disclosure committee policy, establishing a science review and oversight committee, creating a chief compliance officer position, expanding audit committee responsibilities, and enhancements to the company's whistleblower policy, among other reforms) (Brown Decl., Exs. 17 & 18).

- *In re RH S'holder Derivative Litig.*, Case No. 4:18-cv-02452-YGR, slip op. (N.D. Cal. Dec. 18, 2020) (approving $1 million fee award for settlement creating a charter for the disclosure committee, providing for greater audit committee oversight, setting duties for the chief compliance officer, and changes to the company's whistleblower policy, among other reforms) (Brown Decl., Ex. 19).

- *In re Babcock & Wilcox Enters., Inc. S'holder Derivative Litig.*, Case No. 3:18-cv-00347-MOC-DCK, slip op. (W.D.N.C. Dec. 19, 2019) (approving $1 million fee award for settlement amending disclosure committee charter to expand its responsibilities and broadening audit committee obligations, among other reforms) (Brown Decl., Exs. 20 & 21).

- *In re Synchrony Fin. Derivative Litig.*, Case No. 3:19-cv-00130-VAB, slip op. (D. Conn. Apr. 5, 2024) (approving $885,000 fee award for settlement improving management-level disclosure committee, amending the risk and audit committee charters to expand their responsibilities, expanding the duties of the company's chief credit and chief risk officers, and enhancing the company's ombuds policy, among other reforms) (Brown Decl., Exs. 22 & 23).

- *In re Synchronoss Techs., Inc. S'holder Deriv. Demand Refused Litig.*, 2021 U.S. Dist. LEXIS 238014, at *28-33, 41 (D.N.J. Dec. 13, 2021) (approving $800,000 fee award for settlement establishing management-level disclosure committee, setting duties for the chief compliance officer, and enhancing audit committee responsibilities, among other reforms).

As such, the Fee and Expense Amount is eminently reasonable.

    ii.   <u>Plaintiffs' Counsel Provided High Caliber Representation</u>

Courts reward attorneys who bring complex matters to a successful early resolution while also serving the interests of efficiency and judicial economy. *See In re Ashanti Goldfields*, 2005 WL 3050284, at *4 (E.D.N.Y. Nov. 15, 2005) ("The quality of

10

representation factor is designed to reward particularly resourceful legal work that secures a substantial benefit … with a minimum of time invested."). As explained below and in the California Plaintiffs' accompanying final approval brief, derivative litigation is "notoriously difficult and unpredictable" and entails significant obstacles. *Maher*, 714 F.2d at 455; *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d, 1203, 1205 (6th Cir. 1992) (same); *Shlensky v. Dorsey*, 574 F.2d 131, 147-48 (3d Cir. 1978) (high level of risks of establishing liability and proving damages in derivative case should be considered in approving settlement).

Plaintiffs' Counsel's skill and experience[4] were amply demonstrated here by their ability to coordinate their efforts across five related shareholder actions, critically evaluate the available public and non-public documentary evidence, including thousands of pages of internal confidential documents produced by Defendants, prepare well-supported litigation positions to generate meaningful settlement leverage, and develop and negotiate a strong remedial package that all Parties agree confers substantial benefits upon Faraday and its stockholders. *See In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at \*6 (approving fee and finding that "the successful prosecution of this action required knowledge and expertise in the fields of shareholder derivative litigation"). They did so while minimizing unnecessary expenditures of resources by Faraday, the real party in interest in the Derivative Actions. These achievements should be adequately rewarded. *In re Ashanti Goldfields*, 2005 WL 3050284, at \*4. Similarly, "the quality of opposing counsel is important in evaluating the quality of Plaintiffs' counsels' work." *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*20 (C.D. Cal. June 10, 2005). Defendants were well-represented by Troutman Pepper Hamilton Sanders LLP, Latham & Watkins LLP, and

---

[4]    Plaintiffs' Counsel have decades of experience successfully litigating complex derivative and class actions and have achieved significant results for companies and stockholders across the country. *See* Plaintiffs' Counsel's firm resumes, Brown Decl., Exs. 1, 2-1, 3-A, 4-A, & 5-A.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

1  Quinn Emanuel Urquhart & Sullivan LLP, who ably defended their clients' interests.

2  Together, these circumstances strongly weigh in favor of approving the Fee and Expense

3  Amount. *See In re FAB Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277,

4  284 (S.D.N.Y. 2015) ("The Settlement itself, achieved through adversarial negotiation

5  with and litigation against highly competent and experienced defense counsel, therefore

6  evidences that the quality of [plaintiffs' counsel's] representation is high in this case.").

7          iii.   Plaintiffs' Counsel Bore Significant Contingency Risk

8       The agreed-to Fee and Expense Amount is especially reasonable given Plaintiffs'

9  Counsel's significant risk of nonpayment. *See*, *e.g.*, *Young v. Ault*, 2020 U.S. Dist. LEXIS

10  131898, at *12 (C.D. Cal. July 14, 2020) (finding agreed-upon fee and expense award

11  "reasonable in light of the contingent nature" of the derivative litigation); *In re OSI Sys.,*

12  *Inc. Derivative Litig.*, 2017 WL 5642304, at *5 (approving negotiated fee and expense

13  award in derivative case where "[c]ounsel undertook great risk in litigating this matter on

14  a contingent basis, as there was substantial chance that no recovery would be had at the

15  end of a lengthy suit."); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d

16  Cir. 1974) (in awarding attorneys' fees, "[p]erhaps the foremost of [the less objective]

17  factors is the attorneys' 'risk of litigation'").

18       The Derivative Actions were extremely risky. Indeed, the Ninth Circuit has noted

19  that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative

20  lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

21  1995); *see also In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. Sept. 25, 1996)

22  (describing the failure of a board's duty to monitor as "possibly the most difficult theory

23  in corporation law upon which a plaintiff might hope to win a judgment"). This case was

24  no exception. Plaintiffs' Counsel pursued the Derivative Actions on a fully contingent

25  basis knowing that they would likely devote hundreds of hours of hard work to the

26  prosecution of a difficult case, without any assurance of receiving any fees or

27  reimbursement of their out-of-pocket expenses. This risk grew over time as Plaintiffs'

28   

1    Counsel invested more time and effort in the Derivative Actions to ensure Faraday a
2    meaningful recovery, including when the Court granted in part Defendants' motions to
3    dismiss the California Action on January 22, 2024 (ECF No. 93). Had litigation continued,
4    there was a very real prospect that Defendants could have defeated Plaintiffs' claims at
5    the pleading stage or on the merits, and in turn, that Plaintiffs' Counsel efforts would go
6    entirely uncompensated, even in light of California Plaintiffs' anticipated motion for
7    reconsideration. These risks and the benefits secured for Faraday and its shareholders thus
8    fully justify the Fee and Expense Amount. *See Cohn*, 375 F. Supp. 2d at 865-66 ("[I]t is
9    imperative that the filing of contingent … derivative lawsuits not be chilled by the failure
10   to award attorneys' fees or by the imposition of fee awards that fail to adequately
11   compensate counsel for the risks of pursuing such litigation.... [B]ecause of the complexity
12   and societal importance of stockholder and derivative litigation, the most able counsel
13   should be obtained. The attorney's fees awarded should reflect this goal."); *see also In re*
14   *Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (derivative attorneys' fee award was "justified
15   because of the complexity of the issues and the risks"); *In re FAB Universal*, 148 F. Supp.
16   3d at 284 ("The inherent risks of prosecuting this case [] weigh in favor of fee approval.").
17       Despite the significant complexities and risks of the Derivative Actions, Plaintiffs'
18   Counsel were able to achieve a meaningful settlement that provides immediate and
19   substantial benefits to the Company and avoids years of potential delay and uncertainty,
20   thereby supporting the requested Fee and Expense Amount.

21       iv.    Plaintiffs' Counsel Invested Significant Time and Expenses

22       Plaintiffs' Counsel devoted a total of 2,002.9 hours to the Derivative Actions.
23   Brown Decl., ¶ 75. The hours expended were necessary and reasonable and were spent on
24   tasks that directly led to the recovery here. *See id*.[5] A lodestar cross-check is unnecessary

25

26   [5]    Plaintiffs' Counsel also incurred $36,292.70 in expenses performing these tasks.
27   *Id*. These expenses were necessary to effectively prosecute and resolve the Derivative

28
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

because Plaintiffs' Counsel base their fee request on the substantial settlement benefits achieved and because the Fee and Expense Amount plainly would not confer a windfall. Regardless, a cross-check confirms the reasonableness of the agreed-to amount. Plaintiffs' Counsel's total lodestar is $1,515,538.50. Brown Decl., ¶ 76.[6] As set forth in their accompanying declarations, Plaintiffs' Counsel's hourly rates are reasonable, have been regularly approved, and are in line with the current market rate for lawyers litigating similar complex actions. *See also Roberti v. OSI Sys., Inc*., 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) (finding lead counsel's hourly rates in securities litigation—between $525 and $975—to be reasonable); *In re Amgen Inc. Sec. Litig*., 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving hourly rates of $750-$985 for partners, $500-$800 for of counsel and senior counsel, and $300-$725 for other attorneys as reasonable in securities litigation).

The $775,000 Fee and Expense Amount thus represents a fractional lodestar multiplier of 0.49—well below the range deemed reasonable in complex litigation. *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020) (affirming 1.5 fee multiplier); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-54 (9th Cir. 2002) (affirming fee award equal to lodestar multiplier of 3.65, and citing 23 shareholder settlements and multipliers for each where the average multiplier was 3.28); *Destefano v. Zynga, Inc*., 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016) ("Multipliers of 1 to 4 are commonly found to

---

Actions on favorable terms, would have been billed in non-contingency matters, and are therefore properly reimbursed. *Id.*, ¶¶ 72-73 & Exs. 2-5; *see Willner v. Manpower Inc*., 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015). Although the Fee and Expense Amount does not include a separate award for expenses, expenses are excluded from the lodestar cross-check calculation herein.

[6]    "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *In re Am. Apparel, Inc. S'holder Litig*., 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) (internal citation and quotations omitted).

14

be appropriate in complex class action cases."); *Cohn*, 375 F. Supp. 2d at 862 ("courts typically apply a multiplier of 3 to 5" in shareholder litigation).

Furthermore, a "multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered [] by [] counsel." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) ("[T]he lodestar cross-check results in a *negative* multiplier of less than 0.92—a strong indication of the reasonableness of the proposed fee.") (emphasis in original); *In Re Ntl, Inc. Sec. Litig.*, 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007)(negative lodestar multiplier "is reasonable because it will not bring a windfall to co-lead plaintiffs' counsel"); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009)(fee request constituting "deep discount" from lodestar "unquestionably" supports the award).

Moreover, the time spent by Plaintiffs' Counsel is reasonable under the circumstances and commensurate with the challenges they confronted. They expended significant effort to achieve the Settlement, including by: (i) reviewing and analyzing Faraday's press releases, public statements, and filings with the U.S. Securities and Exchange Commission; (ii) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings and orders in the Securities Class Action; (iv) researching the applicable law with respect to the claims alleged and the potential defenses thereto; (v) preparing and filing initial complaints in the Derivative Actions; (vi) researching and evaluating factual and legal issues relevant to the claims; (vii) reviewing thousands of pages of confidential internal corporate documents produced by Defendants; (viii) preparing and filing an amended complaint in the California Action; (ix) researching and drafting the opposition to the four motions to dismiss filed in the California Action and participating in oral argument; (x) engaging in settlement negotiations with Defendants' counsel regarding the

specific facts, and perceived strengths and weaknesses of the Derivative Actions, and other issues in an effort to facilitate negotiations; (xi) researching the Company's corporate governance structure in connection with settlement efforts; (xii) preparing comprehensive written settlement demands and modified demands over the course of the Parties' settlement negotiations; (xiii) preparing a mediation statement; (xiv) participating in the full-day Mediation held on May 13, 2024; and (xv) negotiating and drafting the Stipulation. Stip., § II.

v.    Public Policy Supports the Agreed-To Fee and Expense Amount

Derivative litigation plays an important role in "protect[ing] the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) (derivative suits serve "important role in protecting shareholders of corporations from the designing schemes and wiles of insiders"); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (derivative action is "the chief regulator of corporate management … without it there would be little practical check on [management] abuses"). Plaintiffs' Counsel's efforts produced substantial benefits for Faraday and its stockholders. This would not have been possible without adequate incentives for skilled and experienced counsel to focus their practice on high-risk stockholder derivative litigation. *See In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) (fee award should incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis"); *see also Allred*, 2021 WL 5847405, at *6 ("Public policy also favors an award of attorneys' fees in derivative actions—which keep corporate directors honest and improve corporate governance.").

## IV.   THE PROPOSED SERVICE AWARDS ARE JUSTIFIED AND REASONABLE

California Plaintiffs respectfully request that the Court approve nominal service awards of $2,000 for each of the Plaintiffs in recognition of their participation and efforts in securing substantial benefits for Faraday and its stockholders. Brown Decl., ¶ 78; Stip., §V, ¶ 4.4; *see Young*, 2020 U.S. Dist. LEXIS 131898, at *13 (approving $2,500 service awards to each derivative plaintiff and observing that "[o]ther courts have routinely approved similar incentive awards to compensate plaintiffs for their services and the potential risks incurred by participating in the litigation."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (service awards common in representative actions); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150-51 (S.D.N.Y. 2010) (service awards appropriate to address risks and burdens of class representatives). These proposed awards are well within the range approved by courts as fair and reasonable.[7] Because they will be paid from the Fee and Expense Amount, the Service Awards will not reduce the value of the benefits secured for the Company, and therefore "need not be subjected to intense scrutiny." *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5642304, at *5 (quoting *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002)).

---

[7]     *See, e.g.*, *Sauby v. City of Fargo*, 2009 WL 2168942, at *1 (D.N.D. July 16, 2009) (approving $5,000 and $10,000 service awards not "to compensate plaintiffs, but instead serve to encourage people with legitimate claims to pursue the action"); *In re FAB Universal*, 148 F. Supp. 3d at 285 (approving $2,500 awards in derivative case, calling the requests "minimal").

17

## V.   CONCLUSION

For the foregoing reasons, California Plaintiffs respectfully request that the Court approve the Fee and Expense Amount and the Service Awards.

Dated: October 7, 2024                         Respectfully submitted,

                                               **THE BROWN LAW FIRM, P.C.**

                                               */s/ Robert C. Moest*
                                               By:   Robert C. Moest, Of Counsel (S.B.N. 62166)
                                               2530 Wilshire Boulevard, Second Floor
                                               Santa Monica, CA 90403
                                               Telephone:  (310) 915-6628
                                               Facsimile:   (310) 915-9897
                                               Email: RMoest@aol.com

                                               **THE BROWN LAW FIRM, P.C.**
                                               Timothy Brown (admitted *pro hac vice*)
                                               Saadia Hashmi (admitted *pro hac vice*)
                                               767 Third Avenue, Suite 2501
                                               New York, NY 10017
                                               Telephone:   (516) 922-5427
                                               Facsimile:    (516) 344-6204
                                               E-mail: tbrown@thebrownlawfirm.net
                                               E-mail: shashmi@thebrownlawfirm.net

                                               *Lead Counsel for Plaintiffs Farazmand and Zhou*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this Memorandum of Law contains 5,790 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

By:    */s/ Robert C. Moest*
Robert C. Moest, Of Counsel (S.B.N. 62166)
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone:    (310) 915-6628
Facsimile:    (310) 915-9897
Email: RMoest@aol.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown (admitted *pro hac vice*)
Saadia J. Hashmi (admitted *pro hac vice*)
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone:    (516) 922-5427
Facsimile:    (516) 344-6204
Email: tbrown@thebrownlawfirm.net
            shashmi@thebrownlawfirm.net

*Lead Counsel for Plaintiffs*
*Farazmand and Zhou*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS